IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

SULLIVAN & ASSOCIATES, LLC                                                   PLAINTIFF

v.                      Case No. 3:09CV00079 JLH

JEROMY DANIEL HOLLADAY                                           DEFENDANT

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This is a copyright infringement case in which the defendant, Jeromy Daniel Holladay, defaulted by failing to answer for a period of nearly four months after service of summons and complaint. On May 3, 2010, the Court conducted a damages hearing and set a briefing schedule on the damages issues. The parties have filed their respective briefs, and the matter is ripe for a decision.

### I.

Holladay built single family homes. He also provided insulation, electrical, and HVAC heating and air conditioning services. Holladay built and sold three houses using plans copyrighted by Sullivan & Associates, without permission from Sullivan & Associates, starting in late 2005. He acquired the copyrighted plans from an architect named Jim Darnell, from whom Holladay had bought lots on which to construct houses. Holladay said that Darnell gave him the plans, but that he did not know what Darnell's motivation was for giving him the plans. He said, "After we bought lots from Mr. Darnell, Mr. Darnell would give us plans." Holladay testified, however, that he did not know that the plans were copyrighted and had no reason to suspect that they were copyrighted because the plans said "D & D Home Design" on them. Holladay had previously used Darnell's plans bearing the mark of "D & D Home Design," so he assumed that the plans for the three houses in this case were also coming from Darnell as a licensed architect. Holladay said that it never

occurred to him that it was improper for him to receive and use those plans without paying a licensing fee, even though he had paid licensing fees on plans in the past[1], because Darnell was a licensed architect.

Holladay sold one of the houses for $95,000, another for $96,000, and the third for $95,500. His total gross revenue from the three houses was $286,500.[2]  On examination by his counsel, Holladay testified that his net profit was substantially lower than the gross revenue for the three houses. He said his net profits, after all was said and done, was about $8,000 per house. On redirect by plaintiff's counsel, however, Holladay testified that he had previously submitted an affidavit in which he testified that the net profits for his construction business were $5,951.63 for one of the houses, $6,849.91 for the second, and $5,888.63 for the third house. He agreed that his affidavit further stated that his other businesses received the following payoffs from each of the three houses: $3,750 to Holladay's HVAC business; $1,800 to his insulation business; and $4,450 to his electrical business. Holladay then stated that the payoffs going to his other businesses were not all net profit because that money also included equipment and related items. Holladay said that he did not have records as to the amount of net profits to his other businesses. According to an email from his previous attorney, Holladay admitted to his previous attorney that he had "no idea what he made on the properties." Holladay said he did not remember what he said to his previous attorney. He said that he generally figured his profit margin on each house to be about 10%, or about $9,600 per house.

---

[1] Holladay testified that over a period of ten years he paid licensing fees to a plan designer or architect on eight to ten occasions.

[2] At the hearing, plaintiff's counsel asked Holladay whether his total gross revenue amounted to $289,300. Holladay responded, "If your math's correct, yes, sir." The total sales amount of the three houses is $286,500.

After subtracting closing costs and real estate fees, he said that amount would be reduced to about $9,000.

The only other witness was Steve Vatter, a representative of Sullivan & Associates whose duties included researching and investigating copyright infringements. Vatter testified that Sullivan & Associates charged for licensing plans by the square foot. The fee for initial use was $0.25 per square foot, which, for the plans used by Holladay, amounts to $455. Thereafter, Sullivan & Associates would have charged only $0.15 per square foot for the other two houses, which amounts to $273 for each house. In total, Sullivan & Associates would have charged $1,001 in licensing fees for the three houses.

## II.

### A.   ELECTION OF DAMAGES

Seventeen U.S.C. § 504(a) provides that an infringer of copyright is liable for either (1) the copyright owner's actual damages and any additional profits or (2) statutory damages. Section 504(c) provides that the plaintiff may elect to recover statutory damages, instead of actual damages and profits, any time prior to final judgment:

> (1) Except as provided by clause (2) of this subsection, the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually . . . in a sum of not less than $750 or more than $30,000 as the court considers just. For the purposes of this subsection, all the parts of a compilation or derivative work constitute one work.
>
> (2) In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000. In a case where the infringer sustains the burden of proving, and the court finds, that such infringer was not aware and had no reason to believe that his or her acts constituted

an infringement of copyright, the court in its discretion may reduce the award of statutory damages to a sum of not less than $200.

17 U.S.C. § 504(c).[3]

A plaintiff must elect the form of damages, whether actual or statutory, prior to the final judgment. *See Kamakazi Music Corp. v. Robbins Music Corp.* 534 F. Supp. 69, 74-75 (D.C.N.Y. 1982). Once a plaintiff elects statutory damages, he has waived his right to seek actual damages. *See Jordan v. Time, Inc.*, 111 F.3d 102, 104 (11th Cir. 1997) ("[O]nce a timely election is made to receive statutory damages all questions regarding actual and other damages are rendered moot."); *Twin Peaks Productions, Inc. v. Publications Int'l, Ltd.*, 996 F.2d 1366, 1380 (2d Cir. 1993) (same); 4 MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 1404(A), at 14-66 (2009) ("[A] plaintiff who does not affirmatively make such an election prior to judgment will be limited to monetary recovery of actual damages and defendant's profits."). According to the plain language of section 504(c)(1)—"the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages"—the measure of damages for copyright infringement is actual damages plus profits, as found in section 504(b), unless the plaintiff elects for statutory damages. The plaintiff may not recover both.

In its brief, Sullivan & Associates argues for both actual damages and statutory damages. Its brief concludes with the statement that in addition to recovering actual damages plus profits, "the

---

[3]Although a motion for attorney's fees has yet to be filed, section 505 provides for the recovery of costs and attorney's fees:

> In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party. . . . Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

4

copyright owner also may seek recovery of statutory damages. . . ." It is clear, however, that the law does not allow recovery of both actual and statutory damages. Although it presented evidence and argument relating to the amount of statutory damages should statutory damages be awarded, Sullivan & Associates has never affirmatively elected statutory damages instead of actual damages and profits. Therefore, the Court will award actual damages and profits.

**B.    ACTUAL DAMAGES AND PROFITS**

Section 504(b) describes actual damages and profits:

> The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work.

17 U.S.C. § 504(b). Where a plaintiff elects actual damages, "he foregoes the ability to receive an enhancement based on the willfulness of the alleged infringement, which is only available in connection with statutory damages." *Granger v. Gill Abstract Corp.*, 566 F. Supp. 2d 323, 330 (S.D.N.Y. 2008); *see also* 17 U.S.C. § 504(c)(2). In any event, the infringement was not willful.

The only evidence of actual damages caused to Sullivan & Associates is the licensing fees that it would have collected had Holladay not infringed its copyrighted building plan. *See Walker v. Forbes, Inc.*, 28 F.3d 409, 412 (4th Cir. 1994) ("By stripping the infringer not only of the licensing fee but also of the profit generated as a result of the use of the infringed item, the law makes clear that there is no gain to be made from taking someone else's intellectual property without their consent."); *Granger*, 566 F. Supp. 2d at 330-31 (actual damages may include the licensing fee that the plaintiff would have collected had the defendant not infringed its copyright); *Kleier Advertising,*

*Inc. v. John Deery Motors, Inc.*, 834 F. Supp. 311, 314 (N.D. Iowa 1993) (actual damages were the lost licensing fees plaintiff would have received but for defendant's infringing activity). It is undisputed that Sullivan & Associates would have collected $455 in licensing fees for the first house, and $273 for each of the other two houses, for a total of $1,001 in actual damages to Sullivan & Associates.

As to profits, Sullivan & Associates is entitled to "any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." 17 U.S.C. §504(b). Where the defendant is liable for copyright infringement for having filed an unauthorized copy with the local permitting office and used the unauthorized copy to build homes, the copyright owner is entitled to recover the profits attributable to those homes. *See Robert R. Jones Associates, Inc. v. Nino Homes*, 858 F.2d 274, 280, 281 (6th Cir. 1988) ("[W]here someone makes infringing copies of another's copyrighted architectural plans, the damages recoverable by the copyright owner include the losses suffered as a result of the infringer's subsequent use of the infringing copies. . . . [T]he copyright owner is entitled to recover lost profits if the alleged infringer uses infringing copies of the copyrighted plans to construct the substantially similar building."); *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 517 (9th Cir. 1985) (although the copyright statute "is broad enough to permit recovery of indirect as well as direct profits," a court may deny recovery of profits "if they are only remotely or speculatively attributable to the infringement"); *see also Intown Enterprises, Inc. v. Barnes*, 721 F. Supp. 1263, 1266-67 (N.D. Ga. 1989) (following *Nino Homes*); *Arthur Rutenberg Corp. v. Dawney*, 647 F. Supp. 1214, 1216 (M.D. Fla. 1986) (after finding that defendant infringed plaintiff's copyright by constructing home based

on substantially similar plans, the court awarded damages based on defendant's profits from selling the home). *See generally* 1 NIMMER, *supra*, § 2.08(d)(2); 4 Nimmer, *supra*, § 14.03(A).

Here, Holladay defaulted on the liability claims in the complaint, including that he infringed on the plaintiff's copyright when he filed an unauthorized copy of its architectural plans with the local permitting office and then used those plans to build three infringing homes. Having defaulted on the claim that he violated the plaintiff's copyright by building infringing structures, Holladay is now liable, based on the law cited above, for any profits reasonably attributable to his construction and selling of those structures.

Sullivan & Associates is initially required to present proof only of Holladay's gross revenue. 17 U.S.C. § 504(b). The plaintiff bears the burden of proving gross revenue that is attributable to the defendant's infringement. *See Vane v. The Fair, Inc.*, 676 F. Supp. 133, 137 (E.D. Tex. 1987). A plaintiff is not entitled to a double counting of profits, that is, any profits recovered separately may not also be computed in the actual damages. *Harris Market Research v. Marshall Marketing and Communications, Inc.*, 948 F.2d 1518, 1524 (10th Cir. 1991).

Once the plaintiff makes a prima facie showing of the gross revenue attributable to the infringement, the burden shifts to the defendant to prove its deductible expenses and the elements of profits attributable to factors other than the copyrighted work. 17 U.S.C. § 504(b); *Saxon v. Blann*, 968 F.2d 676, 681 (8th Cir. 1992); *Banff Ltd. v. Express, Inc.*, 921 F. Supp. 1065, 1069 (S.D.N.Y. 1995). The defendant's proof of deductible expenses need not be precise, and, absent bad faith, reasonable approximations are satisfactory. *In Design v. K-Mart Apparel Corp.*, 13 F.3d 559, 564 (2d Cir. 1994) (overruled on other grounds); *see also Sheldon v. Metro-Goldwyn Pictures Corp.*, 309 U.S. 390, 408, 60 S. Ct. 681, 688, 84 L. Ed. 825 (1940) ("[W]hat is required is not mathematical

exactness but only a reasonable approximation."). However, where the defendant fails to present adequate proof of his deductible expenses, any doubts are resolved in favor of the plaintiff. *Id.* (citing *Gaste v. Kaiserman*, 863 F.2d 1061, 1070 (2d Cir. 1988) ("Confronted with the imprecision in the computation of expenses, a court should err on the side of guaranteeing the plaintiff a full recovery, but want of precision is not a ground for denying apportionment altogether.")); *see also Andreas v. Volkswagen of Am., Inc.*, 336 F.3d 789, 795 (8th Cir. 2003) ("Any doubt as to the computation of costs or profits is to be resolved in favor of the plaintiff.").

Holladay testified that he made, on average, about $8,000 in profits on each of the three infringing houses.[4] Upon further examination by plaintiff's counsel, however, Holladay testified that he had previously submitted an affidavit in which he said his net profits for the three houses were $5,951.63, $6,849.91, and $5,888.63. He agreed that his affidavit further stated that for each of the three houses he also received $3,750 for his HVAC business; $1,800 for his insulation business; and $4,450 for his electrical business. In sum, Holladay's three other businesses collected $10,000 per

---

[4]In its brief, Sullivan & Associates argues that the Court should completely disregard Holladay's opinion testimony that he made $8,000 in profits on each house. In support, Sullivan & Associates cites to a line of cases dealing with summary evidence and underlying documents. That argument and those cases, however, are not on point. Those cases dealt with instances in which a summary of documents was admitted into evidence, without the underlying documents being admitted or available for review. *See, e.g.*, *Powell v. Penhollow*, 260 Fed. Appx. 683, 688, (5th Cir. 2007) (admission of a spreadsheet of expenses, without underlying documents, was improper and prejudicial); *U.S. v. Kim*, 595 F.2d 755, 764 (D.C. Cir. 1979) (partial summary of bank documents, which were unavailable, was not admissible). Here, Holladay did not introduce or attempt to introduce a summary description of his deductible expenses or net profits. He simply testified that he approximated his net profits, after deducting all expenses and costs, to be $8,000 on each house. Given that he admitted his opinion was an approximation, his testimony was only bolstered by the additional evidence in his affidavit and his later admission regarding his planned-for profit margin. Although the Court does not rely on his testimony to conclude that his net profits were $8,000 per house, neither will the Court completely disregard that testimony in computing the amount of deductible costs that Holladay has proven within reasonable approximation, resolving any doubt in favor of Sullivan & Associates.

house. However, Holladay said that the payoffs to his other business were not net profits because those charges also included equipment and overhead costs.[5] Holladay then testified that he planned his profit margin on each house to be about 10%, or about $9,600 per house. After subtracting closing costs and real estate fees, he said that amount would be reduced to about $9,000. Holladay's testimony was credible, and his estimate of $9,000 net profit per house seems reasonable. The Court finds that Holladay's net profit for each house was $9,000 or $27,000 in total.

## CONCLUSION

In conclusion, the Court finds that Sullivan & Associates, pursuant to 17 U.S.C. § 504(b), is entitled to actual damages in the amount of $1,001, and profits in the amount of $27,000.

IT IS SO ORDERED this 25th day of June, 2010.

J. LEON HOLMES
UNITED STATES DISTRICT JUDGE

---

[5] Overhead is not deductible from gross revenues in determining profits when an infringement was deliberate or willful. *Saxon*, 968 F.2d at 681. To the extent that Holladay has provided proof on overhead, the Court will consider that proof. Holladay testified that he accepted the three infringing plans from Jim Darnell without inquiring about a license fee because the plans bore the marking "D & D Home Design" and Darnell was a licensed architect. A photocopy of the plans submitted into evidence corroborates Holladay's testimony, and there were no markings on those plans to indicate that Sullivan & Associates owned the copyright to those plans. Therefore, the Court finds that Holladay's infringement was not willful or deliberate.